UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **JENNIFER VANHORN and MATTHEW VANHORN,**<br><br>Plaintiffs,<br><br>vs.<br><br>**AMERICAN STRATEGIC INSURANCE CORP.,**<br><br>Defendant. | 2:21-CV-11881-TGB-EAS<br><br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br>(ECF NO. 14) |

Jennifer and Matthew VanHorn have sued their homeowner's insurance company, American Strategic Insurance ("ASI"), to obtain coverage for damages caused by the flooding of their basement. ASI has moved for summary judgment, contending that the VanHorns' claims are time-barred. For the reasons explained below, the motion will be **GRANTED**.

## I. BACKGROUND

On September 28, 2018, Jennifer and Matthew VanHorn discovered flooding in their basement. Matthew Dep. 36:1-16, ECF No. 14-2, PageID.163. They did not immediately know where the water was coming from but later began to suspect that it was caused by an overflowing toilet. Matthew Dep. 18:17-22, 21:15-23, PageID.159; Jennifer Dep. 32:11-25, ECF No. 14-3, PageID.202. Jennifer called ASI, who insured their home, to report the flooding, and she and her husband began

1

mopping up water. Matthew Dep. 35:14-36:19, 39:15-40:1, PageID.163-64; Jennifer Dep. 34:21-25, PageID.203. Ultimately, their basement required extensive repairs, and many of their personal belongings were destroyed. Matthew Dep. 41:11-44:14, 70:3-7, PageID.164-65, 172.

The VanHorns' insurance policy provided coverage for "sudden and accidental direct physical loss." ECF No. 3-2, PageID.54. But it contained several exclusions—including, as relevant here, exclusions for losses caused by "water … below the surface of the ground … which exerts pressure on or flows, seeps or leaks through any part" of the residence, and losses caused by construction defects and poor workmanship. *Id.* at PageID.58-59. The policy also contained a two-year limitations period for filing a lawsuit in the event of a coverage dispute, which provided:

> No legal action can be brought against us unless … the legal action is filed within two years after the date of loss. The time for commencing an action is tolled from the time the 'insured' notifies the insurer of the loss until the insurer formally denies liability. *Id.* at 62.

After Jennifer reported the flooding, ASI sent letters acknowledging the claim and requesting additional information, to which the VanHorns responded with photos of the damage. Matthew Dep. 51:12-52:12; 143:6-21, PageID.167, 190. ASI also sent independent claims adjusters, contractors, and engineers to investigate the cause of the flooding.[1] Plaintiffs' Ex. A, October 30, 2018 Denial, ECF No. 16,

---

[1] An ASI representative recalled that at least four different companies inspected the VanHorns' residence: Eberl Claim Service, American Leak

PageID.320; Mann Dep. 9:17-16:1, ECF No. 18-2, PageID.384-85. These investigations did not show that the flooding was caused by an overflowing toilet. Mann. Dep. 14:14-16:8, PageID.385. U.S. Forensic, an engineering firm, concluded that the flooding was caused by groundwater seepage and a construction defect—specifically, a failure to install a proper vapor barrier between the house's concrete foundation and the basement's laminate flooring. U.S. Forensic Report, ECF No. 14-6, PageID.241.

On November 1, 2018, a claims adjuster from ASI sent a letter, dated October 30, 2018, informing the VanHorns that ASI was denying their claim based on policy exclusions and U.S. Forensic's conclusions. Matthew Dep. 141:12-14, PageID.189; Plaintiffs' Ex. A, October 30, 2018 Denial, ECF No. 16, PageID.320-23; Certified Mail Receipt, ECF No. 14-7; Claim File Note, ECF No. 14-8. The letter clearly stated the insurance company's decision that the damage would not be covered. It said: "Because of this policy language, we are unable to provide coverage or issue payment for the above stated limitation(s) and/or exclusion(s) for this loss." Plaintiffs' Ex. A, October 30, 2018 Denial, ECF No. 16, PageID.323. At the same time, the letter advised that ASI was willing to consider additional evidence:

---

Detection, Gold Star, and U.S. Forensic. Mann Dep. 9:17-16:1, ECF No. 18-2, PageID.384-85.

> Our position set out above is based upon the information we have to date. Should you have any other information that you would like for us to consider or that you feel would affect our coverage investigation and subsequent coverage decision in this matter, please do not hesitate to send that information directly to me as soon as possible. I will be happy to review the information and reevaluate the decision in this matter as necessary. *Id*.

But it closed with a reservation of rights:

> [P]lease note that we do not waive our right to deny coverage for any other valid reason that may arise. Please do not construe this letter or any failure to act on the part of us … as a waiver of any rights or defenses available to us by contract or at law as all such rights and defenses are hereby specifically reserved. *Id*.

Matthew testified that, after receiving the letter, he did not believe ASI would pay out the claim. Matthew Dep. 142:2-14, PageID.190. Jennifer, meanwhile, recalls that the claims adjuster told her ASI would reopen the claim if the VanHorns hired an outside engineer to inspect the premises. Jennifer Dep. 19:23-20:8, PageID.199. The VanHorns weighed their options and, almost a year after the flooding, decided to hire an independent firm, McDowell & Associates, to conduct moisture tests at the property. Jennifer Dep. 20:3-7, PageID.199. In September 2019, McDowell & Associates prepared a report, concluding that the basement had no groundwater issues and that any flooding was more likely the result of a mechanical issue. Plaintiffs' Ex. B., McDowell & Associates Report, ECF No. 16, PageID.325-30.

4

After receiving the report, the VanHorns supplied ASI with a copy, and ASI forwarded it to U.S. Forensic. Matthew Dep. 144:7-145:24, PageID.190; Jennifer Dep. 23:15-24:21, PageID.200; Mann Dep. 24:1-24, PageID.387. After reviewing the report, U.S. Forensic concluded that "[n]o evidence was presented … to warrant any change in [its] opinions." Plaintiffs' Ex. C, November 4, 2019 Denial, ECF No. 16, PageID.332. The claims adjuster later testified that, though ASI reviewed the report supplied by the VanHorns, the claim remained closed and was never reopened. Mann Dep. 31:3-15, PageID.389.

On November 4, 2019, ASI sent a second letter to the VanHorns, informing them that "the initial denial [of their claim would] stand" based on U.S. Forensic's supplemental conclusions. Matthew Dep. 145:1-20, PageID.190; Plaintiffs' Ex. C, ECF No. 16, PageID.332-35. This letter, like the first, advised the VanHorns that, if they wished, they could forward additional evidence for ASI to review. ECF No. 16, PageID.335. It contained an identical reservation of rights. *Id.*

After receiving the second denial letter, the Vanhorns retained counsel. Jennifer Dep. 25:3-17, PageID.200. Their lawyer sent a letter to ASI advising of his representation on August 26, 2020. Matthew Dep. 145:21-146:16, PageID.190-91.

More than nine months later, on June 2, 2021, the lawyer filed a complaint in Wayne County Circuit Court, raising claims for breach of

contract and declaratory relief.[2] Compl., ECF No. 14-9. As the VanHorns are Michigan residents and ASI is not, ASI chose to remove the lawsuit to federal court. ASI now moves for summary judgment. ECF No. 14.

## II. LEGAL STANDARDS

A party is entitled to summary judgment if it "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). No genuine material factual dispute exists if "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

At summary judgment, the Court construes the evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in their favor. *Id.* The nonmoving party's evidence need not be in an admissible form. *Celotex Corp. v. Catrett*, 477 U.S. 317, 32 (1986). But they must "show that [they] *can* make good on the promise of the pleadings by laying out enough evidence that *will be* admissible at trial to demonstrate that a genuine issue on a material fact exists." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009).

---

[2] Only the first amended complaint, filed on June 3, 2021, has been made a part of the summary judgment record. But a review of the Wayne County Circuit Court docket for Case No. 21-006646-CK shows that the original complaint was filed on June 2, 2021, and the Court may take judicial notice of these records. *See Lynch v. Leis*, 382 F.3d 642, 648 n.5 (6th Cir. 2004).

6

The parties agree that the VanHorns' claims are governed by Michigan law. *Guthre v. Lowe's Home Ctrs, Inc.*, 204 F. App'x 524, 525 (6th Cir. 2006).

## III. DISCUSSION

ASI contends that the VanHorns' lawsuit must be dismissed as time-barred. ECF No. 14, PageID.138-39. Pointing to the two-year contractual limitations period in the Vanhorns' insurance policy, it argues that the VanHorns had until November 1, 2020—two years from the day the claims adjuster sent the initial denial letter via certified mail—to file their complaint. *Id.* Since the complaint was not filed until June 3, 2021, ASI asserts that it is 213 days, or over 7 months, late. *Id.*

The VanHorns do not contest the validity of the two-year limitations period. *See Rory v. Continental Ins. Co.*, 703 N.W.2d 23, 32-34 (Mich. 2005) (upholding validity of contractual limitations periods in insurance policy). Under the terms of their policy, this period was tolled from the day they notified ASI of the loss until ASI formally denied liability. ASI does not dispute that the VanHorns reported the loss immediately. The key question is therefore: when did ASI formally deny liability? Under Michigan law, tolling ends—*i.e.*, liability is formally denied—when an insurer mails a denial notice. *Saad v. Citizens Ins. Co. of Am.*, 576 N.W.2d 438, 440 (Mich. App. 1998).

The Vanhorns do not dispute that ASI mailed them a denial letter on November 1, 2018. They argue, however, that the limitations period

7

was tolled until November 4, 2019—when ASI mailed them the *second* denial letter.³ ECF No. 16, PageID.313-16. They contend that the ASI's conduct in the aftermath of the initial letter—specifically, its conversation with Jennifer, during which the claims adjuster suggested the claim would be reopened if the Vanhorns retained a private engineering firm—led them to believe that their claim was still "viable" until they received the November 4, 2019 letter. *Id.*

To support their position, the Vanhorns rely on *Smitham v. State Farm Fire & Casualty Co.*, 824 N.W.2d 601 (Mich. App. 2012). In *Smitham*, a defendant-insurer denied a claim for losses after the plaintiffs failed to provide information it had requested. *Id.* at 602. Almost a year later, the insurer reopened the claim and—after the plaintiffs supplied the missing materials—disclaimed liability. *Id.* at 602-03. In the months that followed, the parties corresponded further, and the insurer sent a "settlement draft" to the plaintiffs, offering partial

---

³ They also note that ASI did not provide them with a copy of a report by Eberl Claims Service—which inspected the property before U.S. Forensic—until after it mailed the second denial notice, although they do not explain why this fact is significant to the tolling analysis. ECF No. 16, PageID.313-16. To the extent they intend to argue that the tolling period continued until they received this report because ASI violated some sort of duty to disclose, the Michigan Court of Appeals has previously rejected such arguments. *See Mopkins v. National Indem. Co.*, No. 299621, 2011 WL 6186953, at *1-*2 (Mich. App. Dec. 13, 2011) (rejecting argument that limitations period should be equitably tolled because defendant-insurer failed to supply plaintiff with a second copy of insurance policy).

payment. *Id.* at 603. When the plaintiffs later sued for underpayment, the trial court dismissed their lawsuit as time-barred because it was not filed within a year of the loss, as required under the policy. *Id.*

On appeal, the Michigan Court of Appeals vacated the dismissal of the lawsuit. Among other things, it held that the insurer's decision to reopen the plaintiffs' claim effectively withdrew its initial denial, such that the limitations period did not begin to run until it issued another formal denial. *Id.* at 608. It further concluded that the insurer's "settlement draft" could not be deemed such a denial, as it did not make sufficiently clear that the insurer was disclaiming all liability in excess of the amount it had offered to pay. *Id.*

But *Smitham* does not help the VanHorns. Although Jennifer testified that the claims adjuster told her the claim could be re-opened if they hired an engineer to inspect their property, they lack evidence— such as a letter, or testimony about further conversations with an ASI representative—contradicting the claims adjuster's testimony that the claim was never actually reopened. Moreover, there is no difference in the language denying liability between the two denial letters they received. Both letters point to the same policy exclusions. And both inform the VanHorns in no uncertain terms that, "[b]ecause of this policy language, [ASI is] unable to provide coverage or issue payment." The Court cannot discern why one letter should be treated differently from the other for purposes of ending the contractual tolling period.

9

To be sure, both letters advised the VanHorns that they could forward additional evidence for ASI's review if they believed it would impact the coverage decision. But the VanHorns do not argue that the inclusion of this language rendered either letter insufficient as a formal denial. And in any event, Michigan courts have previously rejected similar arguments. *See Robinson v. Allied Ins. Co.*, Nos. 247375 & 251003, 2004 WL 1737690, at *9 (Mich. App. Aug. 3, 2004) (concluding that clause in letter stating, "[i]f you are aware of any facts that are unknown to us, please call them to our attention to that we may consider them," did not waive limitations period because it "did not promise to pay plaintiffs' claims, commence negotiations, or fail to deny the claim").

Although the VanHorns do not expressly invoke the doctrine of equitable estoppel or cite any relevant cases to show how it might apply to their circumstances, their position is essentially that—based on Jennifer's conversation with the claims adjuster—ASI should be equitably estopped from enforcing the contractual limitations period. For equitable estoppel to apply, the VanHorns need evidence that: (1) ASI's actions led them to believe the limitations period would not be enforced; (2) they justifiably relied on this belief; and (3) they were prejudiced as a result of their reliance on this belief. *McDonald v. Farm Bureau Ins. Co.*, 747 N.W.2d 811, 819 (Mich. 2008).

The evidence of record is insufficient to invoke this doctrine. Michigan courts have cautioned that equitable estoppel is to be applied

10

sparingly and only in the most extreme cases—for example, when a defendant intentionally or negligently deceives a plaintiff. *Fuller v. GEICO Indemnity Co.*, 872 N.W.2d 504, 510 (Mich. App. 2015). Even in the light most favorable to the VanHorns, Jennifer's testimony about her conversation with the claims adjuster suggests only that ASI was willing to consider additional evidence—not that it was rescinding its initial denial. The claims adjuster "did not promise to pay plaintiffs' claims, commence negotiations, or fail to deny the claim." *See Robinson*, 2004 WL 1737690, at *9. Nor did he suggest that ASI would not seek to enforce the limitations period. Indeed, there was nothing stopping the VanHorns from consulting with a lawyer or filing a complaint while they weighed their options after receiving the first denial letter.

Moreover, once the VanHorns retained a lawyer in August 2020, it was incumbent on that attorney to investigate the applicable limitations period and take efforts to ensure that a complaint was timely filed to preserve their claims.[4] The record contains no evidence suggesting that the lawyer had any negotiations or communications with ASI that would have justifiably led him to believe that ASI would not seek to enforce the limitations period. Nor does it contain an explanation for why the lawyer

---

[4] The Court notes that, when Matthew was questioned during his deposition about why the lawyer delayed filing a complaint, he did not know. *See* Matthew Dep. 146:13-17 ("Q: The question is do you know why the lawsuit wasn't filed until June 4th of 2021? And I don't want to know any conversations you had between your attorneys. A: I don't know why.")

11

waited nine more months before initiating a lawsuit. *See McDonald*, 747 N.W.2d at 820 (declining to apply equitable estoppel where plaintiff had no evidence that insurer misled attorney regarding limitations period). And parties are generally bound by the acts and omissions of their lawyers. *See Link v. Wabash R. Co.*, 370 U.S. 626, 633-34 (1962).

In an effort to salvage their lawsuit, the VanHorns argue that a COVID-19 pandemic-related executive order entered by the Michigan Governor extended the deadline to file their lawsuit by tolling the limitations period for all civil actions from March 10, 2020 until June 22, 2021, when the pandemic-related state of disaster was declared to be over in Michigan. ECF No. 16, PageID.316-17. But this argument misinterprets the operative effects of the Governor's executive orders. On April 23, 2020, Governor Gretchen Whitmer issued Executive Order 2020-58, after the Michigan Supreme Court entered administrative orders restricting trial-level court operations to mitigate the spread of COVID-19. That executive order provides:

> 1. Consistent with Michigan Supreme Court Administrative Order No. 2020-3, all deadlines applicable to the commencement of all civil and probate actions and proceedings, including but not limited to any deadline for the filing of an initial pleading and any statutory notice provision or other prerequisite related to the deadline for filing of such a pleading, are suspended as of March 10, 2020 and shall be tolled until the end of the declared states of disaster and emergency.

As ASI points out, however, Executive Order 2020-58 was rescinded on June 12, 2020, by the issuance of Executive Order 2020-122. ECF No. 18, PageID.375. Executive Order 2020-122 provides:

> 1. Consistent with Michigan Supreme Court Administrative Order No. 2020-18, all deadlines applicable to the commencement of all civil and probate actions and proceedings, including but not limited to any deadline for the filing of an initial pleading and any statutory notice provision or other prerequisite related to the deadline for filing of such a pleading, are tolled from March 10, 2020 ***to June 19, 2020*** (emphasis added).
> 2. Executive Order 2020-58 will remain in effect through June 19, 2020. Effective June 20, 2020 at 12:01 am, Executive Order 2020-58 is rescinded.

Governor Whitmer's executive orders thus granted the VanHorns an additional 101 days, or 3 months and 9 days (the time-period between March 10, 2020 and June 19, 2020), to file their complaint. But the complaint is over *7 months* late, so the tolling provisions of these executive orders do not operate to save Plaintiff's case. Michigan courts strictly enforce limitations periods. *See Curtis v. State Farm Fire & Cas. Co.*, No. 2:14-CV-103943, 2014 WL 3529417, at *3 (E.D. Mich. July 16, 2014), *reconsideration denied*, 2014 WL 4071900 (E.D. Mich. Aug. 18, 2014) *and aff'd* No. 14-2194, 2015 WL 4139547 (concluding that, although plaintiff's claim was untimely "by a mere three days, Michigan courts have nevertheless strictly enforced these deadlines"); *Saad*, 576 N.W.2d at 439 (concluding that plaintiff's claim was untimely even though limitations period expired only two days before lawsuit was filed).

13

## IV. CONCLUSION

For the reasons explained above, ASI's Motion for Summary Judgment is **GRANTED**, and this case will be **DISMISSED** in its entirety with prejudice.

**IT IS SO ORDERED**, this 31st day of January, 2023.

BY THE COURT:


/s/Terrence G. Berg
TERRENCE G. BERG
United States District Judge